__NOT FOR PUBLICATION__

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____:
                                :
MICHAEL A. GARCIA,              :
                                :  Civil Action No. 11-7030 (JBS)
          Petitioner,           :
                                :
     v.                         :     O P I N I O N
                                :
DONNA ZICKEFOOSE,               :
                                :
          Respondent.           :
_____:
```

**APPEARANCES:**

>    MICHAEL A. GARCIA, Petitioner Pro Se
>    #40236-424
>    FCI Fort Dix
>    P.O. Box 2000
>    Fort Dix, New Jersey 08640

**SIMANDLE, Chief Judge**

Petitioner Michael A. Garcia ("Petitioner"), a federal prisoner currently confined at the Federal Correctional Institution Fort Dix in Fort Dix, New Jersey ("FCI Fort Dix"), submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] on or about December 2, 2011, seeking an Order

---

[1]  Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
     * * *
(c) The writ of habeas corpus shall not extend to a

requiring that the Federal Bureau of Prisons ("BOP") grant Petitioner (1) "[t]he maximum allowable residential reentry center placement incentive nearest Petitioner's release address or, in the alternative; (2) [a] maximum allowable residential reentry center placement incentive nearest Petitioner's release address and home confinement" pursuant to the Second Chance Act of 2007 ("SCA").  (Petition at pg. 38).  The named respondent (hereinafter, the "Government") is Donna Zickefoose, Warden at FCI Fort Dix, where Petitioner was, and is presently, confined at the time he filed this petition.  On January 17, 2012, Petitioner filed a motion for discovery.  (Docket entry no. 2).  On January 23, 2012, Petitioner filed a motion for an evidentiary hearing and a request for appointment of counsel.  (Docket entry no. 3). On May 3, 2012, Petitioner filed a motion for an Order to Show Cause.  (Docket entry no. 4).  Finally, on June 26, 2012, Plaintiff filed a motion for summary judgment.  (Docket entry no. 6).

Because it appears from a review of the submissions that Petitioner did not attempt to exhaust his administrative remedies before filing this petition, the petition will be dismissed

---

prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

without prejudice accordingly.  His motions for various relief
will be denied as moot.

**BACKGROUND**

**A.     The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed
by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the
Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.
In essence, the Act extended the maximum amount of time that the
Bureau of Prisons ("BOP") may place an inmate in an RRC from 180
days to twelve months.

Regularly referred to as the "Second Chance Act," the
amended statute provides, in pertinent part:

> (1) In General.-The Director of the Bureau of Prisons
> shall, to the extent practicable, ensure that a
> prisoner serving a term of imprisonment spends a
> portion of the final months of that term (not to exceed
> 12 months), under conditions that will afford that
> prisoner a reasonable opportunity to adjust to and
> prepare for the reentry of that prisoner into the
> community. Such conditions may include a community
> correctional facility.
>
> (2) Home confinement authority.-The authority under
> this subsection may be used to place a prisoner in home
> confinement for the shorter of 10 percent of the term
> of imprisonment of that prisoner or 6 months.
> . . .
>
> (4) No limitations.-Nothing in this subsection shall be
> construed to limit or restrict the authority of the
> Director of the Bureau of Prisons under section 3621.
> . . .
>
> (6) Issuance of regulations.  The Director of the
> Bureau of Prisons shall issue regulations pursuant to
> this subsection not later than 90 days after the date

3

of the enactment of the Second Chance Act of 2007,
which shall ensure that placement in a community
correctional facility by the Bureau of Prisons is-

    (A) conducted in a manner consistent with
    section 3621(b) of this title;

    (B) determined on an individual basis; and

    (C) of sufficient duration to provide the
    greatest likelihood of successful
    reintegration into the community.

18 U.S.C. § 3624(c).  As noted in the statute, the BOP was

ordered to issue regulations not later than 90 days after the

date of the enactment of the Second Chance Act, to ensure that

placement was conducted consistently with § 3621(b) of the

statute, that the determination was individualized, and that the

duration of placement was sufficient.  Section 3621(b) states:

    (b)   Place of imprisonment.  The Bureau of Prisons
    shall designate the place of the prisoner's
    imprisonment.  The Bureau may designate any
    available penal or correctional facility that
    meets minimum standards of health and habitability
    established by the Bureau, whether maintained by
    the Federal Government or otherwise and whether
    within or without the judicial district in which
    the person was convicted, that the Bureau
    determines to be appropriate and suitable,
    considering-

    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the
      sentence- (A) concerning the purposes for which
      the sentence to imprisonment was determined to be
      warranted; or (B) recommending a type of penal or
      correctional facility as appropriate; and
    (5)   any pertinent policy statement issued by the
      Sentencing Commission pursuant to Section
      994(a)(2) title 28 . . .

> . . . Any order, recommendation, or request
> by a sentencing court that a convicted person
> serve a term of imprisonment in a community
> corrections facility shall have no binding
> effect on the authority of the Bureau under
> this section to determine or change the place
> of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers", providing staff guidance for implementing the Second Chance Act.  The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of
> 12 months pre-release RRC placements, Bureau experience
> reflects inmates' pre-release RRC needs can usually be
> accommodated by a placement of six months or less.
> Should staff determine an inmate's pre-release RRC
> placement may require greater than six months, the
> Warden must obtain the Regional Director's written
> concurrence before submitting the placement to the
> Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home

detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six-months.[2]

## B.   **Factual Background**

Petitioner was sentenced on April 2, 2008, in the United States District Court for the Northern District of Illinois,

---

[2]  Title 28 of the Code of Federal Register, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which states:

(a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

(b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.

(c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21

Eastern Division, Chicago, to serve an 84 month prison term for wire fraud in violation of 18 U.S.C. § 1343.  He is an inmate at FCI Fort Dix.  (Petition at ¶¶ 2-5).  Petitioner's projected release date is in August 2014.  (Petitioner's Memorandum at pg. 15).

Petitioner seeks the maximum time allowable for placement in a RRC pursuant to the SCA.  However, Petitioner does not allege that there has been any Unit Team review or RRC determination made in his case at the time he filed this habeas petition.  Indeed, it is Petitioner's conjecture that he will not receive the maximum time permitted based on RRC determinations made as to other inmates.

Petitioner admits that he has not filed a request for administrative remedy before commencing this action because he believes the administrative remedy process would be futile.  (Pet. Mem. at pp. 12-15).  Petitioner also admits that he was deemed eligible for the Residential Drug and Alcohol Program ("RDAP") in August 2011, and was on the waiting list at the time he filed his petition.  He has provided administrative remedy forms and responses regarding his request to meet and discuss his RRC placement concerns.  (Pet. Exhibits 52(a) and (b)).  Petitioner was told to contact his Unit Team to determine his eligibility for RRC placement and was given the criteria for RRC placement. (Pet. Ex. 52(b)).

## DISCUSSION

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to

8

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director

would "almost certainly" have denied request, and term of imprisonment was completed).

In this case, Petitioner admits that he did not exhaust administrative remedies with respect to his RRC placement determination.  He maintains that he should be excused from pursuing administrative relief because it would be futile.  In particular, Petitioner refers to the responses other inmates received when seeking administrative review of their RRC placement decisions.  Essentially, Petitioner contends that the futility doctrine is applicable here because the BOP has adopted an inflexible placement policy that violates the SCA.  He also appears to argue that, based on past grievance experience, the administrative review process will be impeded and he will be "mired in an endless cycle of [administrative review process] until such time" as the issue becomes moot.  (Pet. Mem. at pg. 14).

This Court finds that Petitioner has ample time to utilize the administrative remedy process once his Unit Team makes its formal recommendation, which has not yet occurred.  Indeed, it would appear that Petitioner seeks to bypass the administrative process entirely and purposely in anticipation of yet-to-be made but preconceived notion of his RRC determination.  Typically, courts have not applied the futility exception based on a timeliness argument (Petitioner's mootness and endless cycle

claim). See Velez v. Zickefoose, 2010 WL 5186158 at *3-4 (D.N.J. Dec. 15, 2010)(the self-serving strategy of bypassing administrative remedies and arguing futility - because there is insufficient time for those remedies to run their course - has never been rewarded by the courts), quoting Shoup v. Schultz, 2009 WL 1544664, *4-5 (D.N.J. June 2, 2009)(the self-described timing calamity, if any, was of the inmate's own making, and such hypothetical self-inflicted distress cannot serve to excuse the exhaustion requirement). See also Winters v. Warden, FCI Ft. Dix, 2009 WL 2928549, *3 (D.N.J. Sept. 10, 2009); Malvestuto v. Martinez, 2009 WL 2876883, *3 (M.D. Pa. Sept. 1, 2009)("Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate.").

Likewise, courts have found the futility argument unavailing where the prisoner simply asserts that the BOP has an inflexible placement policy and won't consider twelve month RRC placements. See, e.g., Levon v. Zickefoose, 2010 WL 3025135, *4 (D.N.J. July 30, 2010)(rejecting futility argument based on the inmate's presumption that his administrative grievance would be denied and concluding that a full administrative record was necessary for the Court to determine whether the RRC placement decision had

been made in accordance with the law); <u>Craig v. Zickefoose</u>, 2010 WL 234908, *3-4 (D.N.J. Jan. 15, 2010)(petition dismissed for failure to exhaust where the inmate alleged that exhaustion should be excused because he was challenging the BOP policy of not affording more than six month RRC placements); <u>Brown v. Grondolsky</u>, 2009 WL 2778437 (D.N.J. Aug. 31, 2009)(dismissing petition for failure to exhaust where there was no demonstrable record of such BOP practice); <u>Shoup</u>, 2009 WL 1544664 at *4 ("While Petitioner invites this Court to reach an umbrella conclusion that no exhaustion of administrative remedies is ever required for any litigant raising a 2241 challenge on the grounds of the Second Chance Act, this Court disinclines the invitation and finds that such holding would fly in the face of the Third Circuit's teachings - as to the firmness of the exhaustion requirement").

Therefore, this Court sees no reason to excuse Petitioner's failure to exhaust administrative remedies.  <u>See Velez</u>, 2010 WL 5186158 at *3 ("the exhaustion requirement is not excused lightly"); <u>Maddox v. Zickefoose</u>, 2010 WL 2762242, *4 (D.N.J. July 12, 2010); <u>Gardner v. Grondolsky</u>, 2009 WL 5103209, *2-3 (D.N.J. Dec. 17, 2009).  Accordingly, the Court will dismiss the Petition without prejudice to the filing of a new § 2241 petition after Petitioner receives a final RRC placement decision and exhausts administrative relief.

Finally, this Court finds that this petition seeks adjudication of a speculative claim, which is prohibited in habeas law.  Petitioner conjectures that he will not receive the maximum 12 month RRC placement that is permitted under the SCA, and that he must be evaluated for his RRC placement at the time of his choosing, well more than 33 months before his projected release date when he filed his habeas petition.  However, Petitioner does not have a liberty interest in a vested right to reduction of his sentence by means of his placement in a RRC: the decision is statutorily reserved to be subject to the BOP's discretion.  Cf. Magnin v. Beeler, 110 F. Supp.2d 338, 340 n. 2 (D.N.J. 2000).  Rather, the statutory or ensuing regulatory enactments merely created an entitlement protected by the Due Process Clause, i.e., these provisions merely protect Petitioner's expectation to be evaluated for such placement.  Cf. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979)(addressing the right to parole consideration); see also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F. Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).  Correspondingly, Petitioner has no vested right in either being evaluated for RRC placement on a certain date or in being placed in a RRC on a certain date: rather, he has a right to be evaluated, generally, and to be placed in a RRC if the BOP concludes, upon due evaluation, that

13

Petitioner shall be so placed.  Here, Petitioner does not assert that he was either unduly denied evaluation or that he received an undue denial of RRC placement.  Rather, Petitioner desires to be considered for the full 12 month RRC placement now and merely assumes that his request will be denied because other inmates at FCI Fort Dix and on his Unit Team have received less than 12 months RRC placement.  However, no language in the Second Chance Act mandates or even allows the BOP to evaluate an inmate for a RRC placement on the basis of a sheer hypothetical.  Analogously, this Court is not in a position to adjudicate a sheer hypothetical.  At this juncture, no RRC determination has been made and this Court will not engage in speculative arguments.

## CONCLUSION

For the foregoing reasons, this habeas petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, will be dismissed without prejudice for Petitioner's failure to exhaust administrative remedies, and because his claim regarding RRC placement is merely hypothetical and speculative at this time. Further, Petitioner's motions for discovery, for an order to show cause, for appointment of counsel and for summary judgment will be denied as moot.  An appropriate Order accompanies this Opinion.

 s/ Jerome B. Simandle

JEROME B. SIMANDLE, Chief Judge
United States District Court

Dated: **September 18, 2012**

14